```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------X
ST. PAUL FIRE & MARINE INSURANCE        :
CO.,                                    :
                                        :
                         Plaintiff,     :
              v.                        :    08 Civ. 465 (BSJ)
                                        :    Opinion & Order
AYN ENTERPRISES INC., GJC               :
STRUCTURES, P.E., P.C., and             :
JOSEPH EDWARD VANCE ARCHITECT,          :
                                        :
                         Defendants.    :
----------------------------------------X
```

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 4/22/10

**BARBARA S. JONES**
**UNITED STATES DISTRICT JUDGE**

Before the Court is Defendant Joseph Edward Vance Architect's ("Vance") motion for dismissal pursuant to Federal Rule of Civil Procedure 12(b)(6) or judgment on the pleadings pursuant to Rule 12(c). Vance also moves to dismiss all cross-claims asserted against it. For the reasons set forth below, Vance's motions are GRANTED.

## BACKGROUND

This action arises out of the alleged April 19, 2002, collapse of the internal walls in the inner atrium of 169 Hudson St., New York, NY 10014 (the "Collapse"), a property owned, managed, and/or occupied by Hudson Street, L.L.C. ("Hudson"). (Compl. ¶¶ 2, 7, 10.) Plaintiff St. Paul Fire & Marine Insurance Co. asserts that at all times pertinent to this action, Plaintiff provided property and business insurance to Hudson for the real and business property that Hudson owned and/or operated at 169 Hudson St. (Compl. ¶ 2.) Plaintiff further contends that prior

1

to the date of the collapse, Defendants Vance, Ayn Enterprises Inc. ("Ayn"), and GJC Structures, P.E., P.C. ("GJC") (collectively "Defendants") were engaged in a renovation and construction project at that address. (Compl. ¶ 8.)

On or about December 31, 2002, Vance agreed that its insurer would pay Hudson $35,000 in return for an agreement releasing Vance "from all claims, actions, [and] causes of action" by Hudson, "its successors[,] and permitted assigns," arising from the Collapse (the "Release"). (Joseph Edward Vance Aff., Ex. 1.) On August 20, 2003, Hudson executed a subrogation receipt which provided that in consideration of Plaintiff's payment of $233,132.87, Hudson subrogrates Plaintiff "to all rights, claims and interest which [Hudson] may have against any person or corporation liable for [the Collapse]." (Reply Aff. of Douglas R. Halstrom, Ex. A.)[1]

On or about March 16, 2005, Plaintiff commenced this action in New York Supreme Court asserting causes of action sounding in contract and tort. Defendant Architron removed the action to the United States District Court for the Eastern District of New York. The action was then transferred to this Court. After the Court granted Architron's motion for summary judgment on the cross-claims asserted against it by Vance, the parties stipulated

---

[1] The subrogation receipt also states: "Warranted [that] no settlement has been made by the undersigned with any person or corporation against whom a claim may lie, and no release has been given to anyone responsible for the loss . . . ." (Reply Aff. of Douglas R. Halstrom, Ex. A.) As neither party discusses this provision in its papers, the Court does not pass on its significance.

2

to the dismissal of Architron from the case.

Before the Court is Vance's motion to dismiss or motion for judgment on the pleadings.[2] Vance has also moved to dismiss all cross-claims asserted against it. For the reasons that follow, Vance's motions are granted.

### LEGAL STANDARD

Rule 12(b)(6) of the Federal Rules of Civil Procedure provides for dismissal of a complaint that fails to state a claim upon which relief may be granted. "In ruling on a motion to dismiss for failure to state a claim upon which relief may be granted, the court is required to accept the material facts alleged in the complaint as true." Frasier v. Gen. Elec. Co., 930 F.2d 1004, 1007 (2d Cir. 1991). The court is also required to read a complaint generously, drawing all reasonable inferences from its allegations in favor of the plaintiff. See California Motor Transp. Co. v. Trucking Unlimited, 404 U.S. 508, 515 (1972).

"While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (internal

---

[2] In the alternative, Vance moves to convert this motion to a motion for summary judgment.

3

quotations omitted). Instead, a plaintiff must assert "enough facts to state a claim to relief that is plausible on its face." Id. at 570. "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. ---, 129 S. Ct. 1937, 1940 (2009).

"The test for evaluating a 12(c) motion is the same as that applicable to a motion to dismiss under Fed. R. Civ. Proc. 12(b)(6)." Irish Lesbian & Gay Org. v. Giuliani, 143 F.3d 638, 644 (2nd Cir. 1998). Thus, the Court must "accept all factual allegations in the complaint as true and draw all reasonable inferences in [Plaintiff's] favor." Johnson v. Rowley, 569 F.3d 40, 44 (2d Cir. 2009).

**DISCUSSION**

I. Motion to Dismiss

Vance argues that Plaintiff's claims against it should be dismissed because Vance was given a general release by Hudson in return for $35,000. The Court agrees.

Under New York law, a general release "should be interpreted to release the claims specifically bargained for and all claims reasonably related to the bargained items." See Tarantola v. Williams, 371 N.Y.S.2d 136, 48 A.D.2d 552, 554 (2d Dep't 1975). Plaintiff concedes that Hudson executed the Release "in respect to all of its claims against Joseph Vance Architect in exchange

4

for the payment of $35,000." (Pl.'s Mem. in Oppos. at 1.) (emphasis added). Nevertheless, Plaintiff argues that "[i]t is unequivocal from reading the release that only the uninsured loss of Hudson Street L.L.C. is referenced." (Id. at 4.) However, Plaintiff points to no such limitation in the Release itself. In fact, as Plaintiff concedes, the Release encompasses "all claims, actions, [and] causes of action . . . in law or in equity" which Hudson and its successors and permitted assigns has against Vance in connection with the Collapse. (Aff. of Joseph Edward Vance, Ex. 1.) (emphasis added) Therefore, the Release encompasses claims related to Hudson's uninsured and insured losses.

"The rights to which the subrogee succeeds are the same as, but no greater than, those of the person for whom he is substituted--he cannot acquire any claim, security, or remedy the subrogor did not have." 73 Am. Jur. 2d Subrogation § 61. Because Hudson (the subrogor) released all of its claims against Vance, Plaintiff (the subrogee) likewise has no cause of action against Vance.

Plaintiff argues next that where a third party tortfeasor obtains a release from an insured with knowledge or with information that should give him knowledge of the existence of the insurer's subrogation rights, such release does not bar the insurer's right of subrogation. (Pl.'s Mem. in Oppos. at 5.) (citing Gibbs v. Hawaiian Eugenia Corp., 966 F.2d 101, 107 (2d Cir. 1992)).

5

It is true that where a third party obtains a release from an insured "[1] with knowledge that the latter has already received payment from the insurer or [2] with information that, reasonably pursued, should give him knowledge of the existence of the insurer's subrogation rights, such a release does not bar the right of subrogation of the insurer." Gibbs, 966 F.2d at 107 (emphasis added). But that is not the case here.

Under New York law, "[a]n insurer's right of subrogation attaches, by operation of law, upon its payment of an insured's loss." Allstate Ins. Co. v. Mazzola, 175 F.3d 255, 260 (2d Cir. 1999) (citations omitted). This occurred on August 20, 2003, when Hudson executed the subrogation receipt with Plaintiff. But as discussed above, the Release was executed by Vance and Hudson on or about December 31, 2002, eight months before Plaintiff's subrogation rights attached. See Gibbs, 966 F.2d at 107 (describing how in Weinberg v. Transamerica Ins. Co., 62 N.Y.2d 379, 477 N.Y.S.2d 99 (1984), "the release at issue . . . was given before the insurer had made payment to the insured and thus before the right to subrogation came into being"). Moreover, Vance could not have been on notice (actual or otherwise) of the existence of Plaintiff's subrogation rights when it obtained the Release because such rights had not yet come into existence. Compare Allstate Ins. Co., 175 F.3d at 260 (explaining that if defendants obtained a release from the insured "with actual or constructive knowledge that [the insurer] had already paid

6

benefits to the [insured] and thus obtained subrogation rights," the release would not preclude the insurer's right of subrogation).

Because Vance obtained a Release from Hudson encompassing all claims which Hudson and its successors and permitted assigns had against Vance before Plaintiff's subrogation rights attached, the Release precludes Plaintiff's causes of action against Vance as a matter of law. Therefore, the Court GRANTS Vance's motion to dismiss.

II. Cross-Claims

Vance also moves to dismiss all cross-claims asserted against it. As no opposition to this motion has been filed, Vance's motion to dismiss all cross-claims asserted against it is GRANTED.

## CONCLUSION

For the reasons set forth above, Vance's motions to dismiss Plaintiff's claims and all cross-claims are GRANTED.

7

**SO ORDERED:**

_____
**BARBARA S. JONES**
**UNITED STATES DISTRICT JUDGE**

Dated:   New York, New York
         April 21, 2010

8